UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| LARRY VERNON SANDERS, | ) |
| | ) Case No. 3:16-cv-00014-GFVT |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) **&** |
| BEMIS COMPANY, INC., | ) **ORDER** |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Bemis Company, Inc., a food facility in Shelbyville, Kentucky, seeks summary judgment on employee Larry Sanders' disability discrimination claim. Sanders suffers from Type 1 diabetes, and he maintains Bemis has not provided him with a working schedule that reasonably accommodates his medical condition. Because Mr. Sanders has not put forth sufficient evidence to demonstrate Bemis violated the Kentucky Civil Rights Act, the Court finds in favor of Bemis and GRANTS the company's summary judgment motion.

**I**

In or around 1986, Larry Sanders was diagnosed with Type 1 diabetes.[1] [R. 24 at 1.] Subsequently, he began working as a packer for Allusuisse, a food facility in Shelbyville, Kentucky. [R. 1-2 at 5.] Since Sanders began his employment with the facility, it has changed ownership several times. Nonetheless, Sanders has maintained consistent employment with the

---

[1] This factual summary is compiled from Sanders' complaint and response brief, as well as the Defendant's motion for summary judgment and the numerous exhibits in the record. When evaluating a request for summary judgment under Federal Rule of Civil Procedure 56, all reasonable inferences are drawn in favor of the non-movant. *See, e.g.*, *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

facility, and he continues to work there today.  Currently, the facility is owned and operated by Defendant Bemis Company, Inc.[2]

Prior to March 2002, Mr. Sanders worked consistent, eight hour shifts as a materials handler with the facility.  [R. 24 at 3.]  But at that time, the facility—then owned and operated by Alcan—altered Sanders' work schedule and required him to work twelve hour variable shifts.  [*Id.*]  Sanders' physician Dr. Hoffman sent multiple letters to Alcan management requesting that Sanders be allowed to keep a consistent eight hour shift schedule in light of his Type 1 diabetes, and Alcan eventually granted Dr. Hoffman's request.  [*Id.*]  Accordingly, Sanders was assigned a Monday through Friday, 7:00 a.m. to 3:00 p.m., eight hour shift schedule.  Sanders was working this schedule at the time Defendant Bemis Company, Inc., purchased Alcan and took over the food facility.  [*Id.*]

Once Bemis assumed management of Alcan, Sanders was required to go through a reapplication process to continue employment with the facility.  [*Id.*]  As part of the reapplication process, Sanders filled out a "Voluntary Affirmative Action Program Post-Employment Questionnaire."  [R. 24-4 at 2.]  When Sanders filled out that form, he did not check the box entitled "Individual with a Disability" or otherwise reference his Type 1 diabetes or the letters from Dr. Hoffman.  [*Id.*]  Sanders maintains providing information about his diabetes would have been "additional" and "unnecessary," because Bemis should have already been in possession of his personnel file from Alcan, which would have included the appropriate documentation.  [R. 24 at 4.]

---

[2] Although Sanders refers to his employer as "Bemis Packaging, LLC" throughout his filings, the Defendant has made clear that Sanders' employer is best identified as "Bemis Company, Inc." [*See* R. 1; R. 7.]  The Court has changed the caption of the case to reflect the same.

Sanders continued working his eight hour shift schedule under the new Bemis management without incident until June 2014. But at that time, a Bemis supervisor approached Sanders and informed him he would need to work twelve hour, rather than eight hour, shifts going forward. [*Id.*] When Sanders spoke to the Human Resources department about the reasonable accommodation information in his personnel file, Sanders was told that all Alcan personnel files had been destroyed and that Bemis was not privy to any information about his diabetes. [*Id.*] The HR department then gave Sanders a new form for his physician to complete regarding any necessary disability accommodations. [*Id.*]

Shortly thereafter, Sanders returned to the HR department with a letter from his new physician, Dr. Wood, which requested that Sanders continue working eight hour shifts at the same time every day. [*Id.* at 5.] However, on the form that Bemis provided to Dr. Wood, Dr. Wood indicated that Sanders was not substantially limited in any life activities as a result of his health condition. [*Id.*; *see also* R. 15-27 at 4.] Based on the provided form, Bemis required Sanders to work twelve hour shifts beginning on June 30, 2014. [R. 24 at 5.] The record suggests Sanders worked the longer shifts successfully, without additional breaks or any other accommodations. [*See* R. 15-1 at 6.]

In November 2014, Sanders filed a civil complaint against Bemis in Shelby Circuit Court, alleging disability discrimination under the Kentucky Civil Rights Act, gender discrimination, retaliation, promissory estoppel, and intentional infliction of emotional distress. [R. 1-2.] Once it became clear that Sanders sought more than $75,000 in damages, Bemis removed the case to the Eastern District of Kentucky on the basis of the Court's diversity jurisdiction. [*See* R. 1.]

Since the complaint was filed, there have been a number of developments in Sanders' relationship with his employer.  In late December 2014, Sanders went to see a new physician, Dr. Ghias M. Arar. [R. 24 at 5.] Dr. Arar wrote a note to Bemis on Sanders' behalf recommending Sanders work only eight hours per day and refrain from prolonged standing. [*Id.*; *see also* R. 15-1 at 6.] Following the submission of that note, Sanders unilaterally began leaving his assigned twelve hour shifts four hours early, without waiting for any approval or confirmation from Bemis. [R. 15-1 at 7.] Sanders admits he was not authorized by anyone at Bemis to leave his shift early, but he did so because he thought that was what Dr. Arar wanted. [*Id.*] Sanders was never penalized or otherwise disciplined by Bemis for this unauthorized behavior. [*Id.*]

After Bemis received the note from Dr. Arar, Bemis reached out to the physician to request additional information about Sanders' medical condition.  Bemis specifically asked Dr. Arar if Sanders could continue working a twelve hour shift with any sort of reasonable accommodation. [*Id.*] In response, Dr. Arar informed Bemis that Sanders should only be required to work eight hour shifts but that he could work up to twelve hours a day "based on how he feels." [*Id.* at 9.] By late July 2015, after communication between Bemis and Sanders' legal counsel, Bemis transitioned Sanders back to an eight hour shift schedule. [*See id.*] Since that time, Sanders has been arriving at 11:00 a.m. and leaving at 7:00 p.m. with no variation in his start and end times. [*See* R. 15-60.] Sanders further indicates he now works for three days, is off for two days, works for two days, and then is off for another three days. [R. 24 at 5; *see also* R. 24-8.]

Although Sanders appears to have obtained a more favorable work schedule from Bemis,[3] he persists in his lawsuit. Bemis has filed a motion for summary judgment on all of Sanders' claims. [R. 15.]

## II

### A

When sitting in diversity, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). However, when considering summary judgment arguments, a federal court applies the standards of Federal Rule of Civil Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991). *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe."

---

[3] Sanders' prayer for relief includes a request for Bemis to reinstate Sanders to an eight hour shift schedule in a climate controlled environment. [R. 1-2 at 17.] But even though Sanders is currently working an eight hour shift schedule, he still complains that it is "variable," causing his glucose levels to be "out of control, again." [R. 24 at 5-6.] Although not specified in the complaint, the record suggests Sanders specifically desires a Monday through Friday eight hour shift schedule. [*See* R. 15-61 at 3, 5-7.]

*Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

**B**

Mr. Sanders has agreed to dismiss all of his allegations except for his disability discrimination claim. [*See* R. 24 at 1 ("In the interest of conserving scarce judicial resources, Plaintiff concedes to dismissal of Counts Two-Five."), 10.] In light of that concession, the sole question before the Court is whether Bemis discriminated against Sanders on the basis of a particular disability in violation of the Kentucky Civil Rights Act ("KCRA").

Pursuant to the KCRA, KRS § 344.040(1), an employer may not discharge or otherwise discriminate against an individual with a qualified disability. The KCRA disability discrimination provisions parallel the requirements of the Americans with Disabilities Act ("ADA"). *See Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007); *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 100-01 (Ky. App. 2000). Accordingly, the Court may consider both case law applying the KCRA as well as case law analyzing broader ADA claims to resolve the instant summary judgment motion. *See, e.g.*, *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705-06 (Ky. App. 2004) (noting Kentucky courts "may look to federal case law" when analyzing discrimination claims under KRS 344.040).

To prevail on his disability discrimination claim, Sanders must prove (1) he had a disability as that term is used in the KCRA; (2) he was otherwise qualified to perform the requirements of the job, either with or without reasonable accommodation; and (3) that he

suffered an adverse employment action because of his disability.[4]  *Id.* at 706.  The Court begins by noting Mr. Sanders has only addressed the first of the necessary elements—whether he is disabled under the KCRA—and that even this element is addressed only partially, without a single citation to the record.  [*See* R. 24 at 8-9.]  While the Court has no duty to search the entire record to ensure it is devoid of a genuine issue of material fact, *see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), the Court has thoroughly reviewed the affidavits, exhibits, and briefs filed by both parties.  Because Sanders has neither demonstrated proof of an actual disability nor provided evidence related to the other elements of the claim, summary judgment in favor of Bemis is appropriate.

The following definition is used to evaluate the first prong of the relevant test, whether an individual is "disabled" under the KCRA:

"Disability" means, with respect to an individual:

(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;

(b) A record of such an impairment; or

(c) Being regarded as having such an impairment.

KRS § 344.010(4).  "Whether the plaintiff has an impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions.  The ultimate

---

[4] This test, primarily used where a plaintiff produces direct evidence of discrimination, is the appropriate test for failure to accommodate claims.  *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) ("[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.").  If a plaintiff has only indirect evidence of discrimination, the burden of proof would shift to the employer to articulate a legitimate, non-discriminatory reason for making the adverse employment decision, and courts employ a five-prong test.  *See, e.g.*, *Ferrari v. Ford Motor Co.,* 826 F.3d 885, 891-92 (6th Cir. 2016); *Hammon v. DHL Airways Inc.*, 165 F.3d 441, 449 (6th Cir. 1999); *Noel v. Elk Brand Mfg. Co.*, 53 S.W.95, 101 (Ky. App. 2000).  Ultimately, whether the Court employs the three-prong or the five-prong test to evaluate Sanders' claims is immaterial, because Sanders has not proven he had or has a qualified disability under the KCRA, nor has he put forth any evidence regarding the additional prongs of either test.

7

determination of whether the impairment substantially limits the major life activity generally is a factual issue for the jury, but it may be resolved upon summary judgment under the appropriate circumstances." *Hallahan*, 138 S.W.3d at 707 (internal citations omitted).

Mr. Sanders' complaint indicates that Sanders "is a documented diabetic who sees a specialist doctor on a regular basis to keep his diabetes under control." [R. 1-2 at 6.] Accordingly, Mr. Sanders "is required to wear an insulin pump and monitor his blood sugar level closely." [*Id.*] Sanders' response summarily states that his diabetes substantially limits Mr. Sanders' major life activities, but the response does not indicate which life activities are limited. [*See* R. 24 at 9.] A letter from Sanders' physician Dr. Wood indicates Sanders suffers from Type 1 diabetes, which is distinct from the more common Type 2 diabetes, and Dr. Wood describes various difficulties Mr. Sanders faces in maintaining his glucose levels. [R. 15-27 at 2-3; R. 24-2 at 2.] Nonetheless, when asked whether Sanders is "substantially limited in any major life activities as a result of his/her health condition," Dr. Wood answered "no" and identified no major life activities that are impacted by Sanders' diabetes diagnosis. [R. 15-27 at 4.]

Relevant case law indicates that whether diabetes is considered a disability under the ADA and, therefore, the KCRA "is a matter of degree." *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 34 (1st Cir. 2010). In some circumstances, an individual's diabetes could be so severe that it "substantially limits one or more of the major life activities" of that individual. KRS § 344.010(4); *accord* 42 U.S.C. § 12102(1). For example, the Seventh Circuit found diabetes to be a disability where the diabetic plaintiff showed he had to inject himself with insulin approximately three times a day and test his blood sugar at least ten times a day; that he could not completely control his blood sugar despite the injections; that he suffered from hypoglycemic episodes that impaired his mental and physical abilities; that he was at high risk

8

for hypoglycemic attacks; and that he suffered from kidney and nerve damage because of the diabetes. *Nawrot v. CPC Int'l*, 277 F.3d 896, 904-05 (7th Cir. 2002). However, *Nawrot* is the exception rather than the norm, and diabetes ordinarily fails to rise to the level of a disability under the ADA or KCRA.

"Numerous federal courts have held that diabetes, even when accompanied by the use of medication and dietary restrictions, is not necessarily a disability under the ADA." *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 611 (W.D.N.Y. 2015). Where a plaintiff had to take a single daily shot of insulin and required only "modest dietary and lifestyle changes," the Fifth Circuit determined the plaintiff's diabetes was not a qualified disability. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223-24 (5th Cir. 2011). Similarly, the First Circuit found a plaintiff's diabetes did not substantially limit major life activities where the plaintiff required "medication, a fixed meal schedule, [and] timely snack breaks, without more." *Carreras*, 596 F.3d at 34. And the Sixth Circuit has determined a plaintiff was not disabled because of her diabetes even though she suffered an "unspecified number" of "unpredictable hypoglycemic episodes" at work. *Salim v. MGM Grand Detroit, LLC*, 106 F. App'x 454, 459-61 (6th Cir. 2004). According to the Sixth Circuit, the *Salim* plaintiff's alleged impairments were "nowhere near the impairments suffered by the Plaintiff in *Nawrot*," and her "schedule-specific job restriction" was insufficient to qualify as a substantial impairment. *Id.* at 460. *See also Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (finding a doctor's order that a plaintiff should take frequent breaks to avoid stress and to avoid prolonged overtime did not constitute a substantial impairment of a plaintiff's ability to work).

In the instant action, Mr. Sanders has not put forth sufficient evidence to demonstrate his diabetes should be considered a disability for purposes of the KCRA. Sanders' physician Dr.

9

Wood clearly stated in June 2014 that none of Sanders' major life activities were substantially limited as a result of his diabetes. [R. 15-27 at 4.] Sanders' diabetes does not cause him any functional limitations. [*Id.*] Sanders' neuropathy, a negative side effect of his diabetes, occasionally causes tingling in his feet; however, the neuropathy is not severe or painful enough to require daily medication. [R. 15-78 at 3-4.] And, notably, Sanders agrees with Dr. Wood's opinions that he is not substantially limited in any major life activities because of his diabetes. [R. 15-76 at 3-4.] Sanders testified that he feels he can still be a good worker, driver, husband, father, carpenter, hunter, and fisherman, despite his diabetes. [*See* R. 15-68 at 1-4.]

Sanders relies on the letter submitted by Dr. Ghias Arar to suggest his diabetes is more severe than the average case. [*See* R. 15-56 at 2.] But this letter neither proves Sanders has a disability under the KCRA nor creates a fact issue about the extent of any substantial limitations. First, Dr. Arar never explains how or why Sanders' diabetes substantially limits or impairs any of his major life activities; he merely asks for Bemis to give Sanders an eight hour shift schedule. [*See id.*] Moreover, the evidentiary record on the whole calls into question the credibility of Dr. Arar's March 2015 letter to Bemis.[5] Notably, Mr. Sanders stated in his deposition that he does not have a significant relationship with Dr. Arar; by contrast, he believes he has only seen Dr. Arar for a single medical appointment. [R. 15-45 at 3.]

Sanders also relies on the affidavit attached to his response brief to suggest his diabetes is a disability under the KCRA. [*See* R. 24-8.] Although the affidavit represents Sanders' sworn testimony, it does not create a fact issue or preclude summary judgment. "[A] party cannot

---

[5] Someone from Dr. Arar's clinic appears to have faxed a draft of the March 2015 letter to Julie Sanders, Mr. Sanders' wife and a non-physician, for approval before Dr. Arar actually provided the letter to Bemis. The fax cover sheet reads "See what you think of this rough draft. Enough info?" [*See* R. 15-54 at 2.] The draft was presumably approved by Ms. Sanders, because the same document was then sent directly to Bemis. [*Compare* R. 15-54 at 3 *with* R. 15-56 at 2.]

10

create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997); *see also Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  The affidavit, which was executed on October 10, 2016, some time after his deposition was taken, states Sanders' diabetes "substantially impairs [his] ability to eat, sleep, perform manual tasks, and work." [*Id.*]  This testimony directly contradicts his earlier deposition testimony.  [*See, e.g.*, R. 15-68 at 1-4; R. 15-76 at 3-4.]  Accordingly, the affidavit may be disregarded for purposes of Bemis's summary judgment motion.

Summary judgment in favor of Bemis is appropriate, then, because Sanders has not pointed to any evidence demonstrating his diabetes is actually a disability under the KCRA.  But even if Sanders' diabetes is a qualified disability, summary judgment should still be granted.  As mentioned above, Sanders only addresses the first element of the test for a disability discrimination claim, and he does so without any citations to the record.  [*See* R. 24 at 8-9.]  As for the other elements of the claim, Sanders states only that "Plaintiff requested a reasonable accommodation" and "Bemis failed to grant Plaintiff's request for a reasonable accommodation." [*See id.* at 9.]  Sanders does not explain when or how he requested a reasonable accommodation, nor does he put forth evidence demonstrating Bemis failed to grant any such request.  He points to nothing in the record beyond his complaint in support of his claims and, instead, relies on bare, conclusory assertions.[6]

---

[6] Mr. Sanders addresses the other prongs of the disability discrimination test in his response brief as headings only, with one sentence of black letter law written below his first statement. [*See* R. 24 at 9.] The record suggests Sanders may have run out of time to file an appropriate response.  On October 11, 2016, United States Magistrate Judge Edward B. Atkins held a telephone conference with the parties to discuss Mr. Sanders' second request for an extension of time to respond to Bemis's summary judgment motion.  [R. 23.]  Judge Atkins ordered Sanders to file his response brief by the end of that day.  [*Id.*]  The response, along with seven attached exhibits, appeared in the Court's electronic filing system on October 12, 2016.  [R. 24.]

By contrast, Bemis has set forth significant evidence showing Sanders has been allowed to work an eight-hour shift schedule for the last fifteen months, which negates Sanders' naked contention that Bemis failed to grant him any reasonable accommodation.  Since late July 2015, Mr. Sanders has been arriving at 11:00 a.m. and leaving at 7:00 p.m., working three days one week and four days the next week, with no variation in his start and end times.  [*See* R. 15-60.] While Mr. Sanders agrees this work schedule strictly complies with Dr. Wood's recommendations,[7] Sanders maintains he wants to work eight hours a day, five days a week, excluding weekends.  [R. 15-61 at 3, 5-7.]  This request appears to be Sanders' personal preference, rather than a necessary disability accommodation based on his physicians' recommendations.

In the end, the Court is not tasked with making arguments on behalf of Mr. Sanders which he did not make for himself.  Bemis has appropriately supported its arguments by citing to the record and pointing out an absence of genuine disputes of material fact, but Sanders has not. This is unacceptable, as the law requires Sanders to "do more than simply show that there is some metaphysical doubt as to the material facts" in order to survive a summary judgment motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the Sixth Circuit has noted, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  *See also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) ("Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint

---

[7] Dr. Wood's letter recommends that Mr. Sanders "work an 8 hour shift rather than a 12 hour shift and that the shift be the same time [e]very day."  [R. 25-1.]  Dr. Wood's letter says nothing about which days of the week Mr. Sanders should work.  [*Id.*]

to defeat the motion for summary judgment.") In light of the case law, the Court cannot conclude Sanders' diabetes actually constitutes a disability under the KCRA. Moreover, Sanders has simply failed to draw the Court's attention to a single piece of evidence in the record supporting his allegations. Accordingly, summary judgment in favor of Bemis shall be granted.

### III

For the foregoing reasons and being otherwise sufficiently advised, the Court hereby **ORDERS** that the Defendant Bemis Packaging, LLC's motion for summary judgment [R. 15] is **GRANTED**. Judgment in favor of Bemis shall be entered contemporaneously herewith.

This the 30th day of January, 2017.

Gregory F. Van Tatenhove
United States District Judge