UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| LARRY VERNON SANDERS, ) | |
| ) | Case No. 3:16-cv-00014-GFVT |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| BEMIS COMPANY, INC., ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Larry Sanders has asked the Court to reconsider its opinion granting summary judgment in favor of his employer, Bemis Company, Inc., on his disability discrimination claim. Sanders maintains he filed an incorrect version of his response to Bemis's summary judgment motion and that the mistake was excusable neglect pursuant to Federal Rule of Civil Procedure 60(b). Sanders also asks the Court to amend its opinion and judgment under Rule 59 to avoid a manifest error of law. For the reasons that follow, the Court DENIES Mr. Sanders' requests.

**I**

Two and a half years ago, Plaintiff Larry Sanders filed suit against his employer Bemis Company, Inc., for employment discrimination. [*See* R. 1-2.] After both parties completed discovery, Bemis filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all of Sanders' claims. [R. 15.] Mr. Sanders sought, and was given, one extension of time to file a brief in response to Bemis's motion. [*See* R. 16; R. 17; R. 18.] After Sanders sought a second extension, United States Magistrate Judge Edward B. Atkins held a telephone conference with the parties. [R. 20.] During that October 11, 2016, phone conference, Mr. Sanders advised that a computer malfunction had interfered with his preparation of the

response brief. [*See* R. 23.] But despite his initial setback, Sanders indicated his response could be filed by that afternoon. And Magistrate Judge Atkins ordered Sanders to do just that. [*Id.*]

The Magistrate's order notwithstanding, Sanders did not file a response by midnight, October 11. Instead, a ten page response brief along with nine attachments and a proposed order appeared in the record the next day, October 12. [*See* R. 24.] In the filed response, Sanders conceded to the dismissal of every count in his complaint besides the Kentucky Civil Rights Act ("KCRA") disability discrimination claim. [*Id.* at 1.] Sanders then discussed the facts of the case, the standard of review for summary judgment motions, and the first prong of a valid claim under the KCRA—namely, that Sanders suffers from a "disability" as defined in the KCRA. [*Id.* at 8-9.] Sanders did not make an argument with regard to the second and third prongs of a valid KCRA claim: that he requested a reasonable accommodation and that Bemis failed to grant the request. Instead, Sanders referred to those prongs by heading only and then offered a one sentence conclusion at the end of the brief. [*Id.* at 9-10.]

Two days later, Bemis replied to Sanders' response and pointed out Sanders' total failure to address relevant prongs of the KCRA test. [R. 25.] In fact, Bemis devoted an entire section of its reply, entitled "Sanders has waived any argument that he requested a reasonable accommodation and that he was denied such an accommodation" to that purpose. [*Id.* at 5.] And Bemis pointed out the deficiencies in Sanders' response a number of times, in clear language:

> [B]y failing to make arguments that he had [ ] requested and was denied a reasonable accommodation, Sanders has waived those arguments. Thus, even if the Court determined that Sanders showed he was disabled, Bemis is still entitled to summary judgment because Sanders has waived his arguments that he requested a reasonable accommodation and that Bemis failed to provide him with one.

[*Id.* at 8.]

Subsequently, no significant activity occurred in the case for one hundred eight days.[1] Then, on January 30, 2017, the Court issued a Memorandum Opinion and Order granting Bemis's motion for summary judgment. [R. 27.] The Court also entered judgment in favor of Bemis, cancelled the Final Pretrial Conference and Jury Trial dates, and closed the action. [R. 28.] In its opinion, the Court determined Sanders had failed to demonstrate proof of a "disability" as defined in KRS § 344.010(4). [*See* R. 27 at 6-11.] And the Court also pointed out Sanders' failure to adequately develop arguments with regard to the remaining elements of his KCRA disability discrimination claim. [*Id.* at 11-13.]

Two days later, Sanders filed the present motion to alter or amend the Court's opinion and judgment. [R. 29.] By way of this motion, Sanders' counsel, Mr. Samuel G. Hayward, explains that on the day Magistrate Judge Atkins ordered the response brief be filed, he gave his law clerk permission to act as his agent and to electronically file an approved version of the response and accompanying exhibits. [*Id.* at 6.] Unfortunately, the law clerk experienced computer trouble between the hours of 8:30 p.m. and midnight on October 11, and the law clerk inadvertently uploaded an incorrect version of the response brief. Mr. Hayward indicates this mistake was "masked" until the Court issued its order granting summary judgment in favor of Bemis. [*Id.* at 7.] Mr. Sanders now asks the Court to (1) vacate the judgment pursuant to a finding of excusable neglect under Federal Rule of Civil Procedure 60(b), and/or (2) amend the judgment under Federal Rule of Civil Procedure 59(e) because the decision was manifestly unjust.[2] [*See id.* at 1-15.]

---

[1] The only docket entry during this one hundred eight day time period is a notice of appearance filed by Marilyn Linsey Shrewsbury, a new counselor of record for Mr. Sanders. [*See* R. 26.]

[2] Sanders also mentions Federal Rule of Civil Procedure 52(b) five times in his motion [*see* R. 29 at 1, 2, 4]; however, Sanders wholly fails to explain how or why Rule 52, which deals with actions tried on the facts without a jury, applies to the present situation. Accordingly, the Court evaluates only the applicability of Rules 60(b) and 59(e) in this opinion.

## II

### A

Sanders' failure to file an adequate response brief is not grounds for relief under Federal Rule of Civil Procedure 60(b). Rule 60(b)(1) allows a Court to relieve a party from a final judgment because of "mistake, inadvertence, surprise, or excusable neglect," and Mr. Sanders maintains excusable neglect is relevant here. But under Sixth Circuit precedent, the excusable neglect threshold is "strict" and "can be met only in extraordinary cases." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) (quoting *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989)). A movant must first establish his or her failure was indeed a case of "neglect," which exists when the failure occurred "because of a simple, faultless omission to act, or because of a party's carelessness." *Id.* Then, if the failure was due to neglect, the movant must also establish that it was "excusable." *Id.*

The Supreme Court has outlined five factors for courts to consider when making the equitable determination of whether excusable neglect exists: "(1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith." *See, e.g.*, *Burnley v. Bosch Americas Corp.*, 75 F. App'x 329, 333 (6th Cir. 2003); *see also Pioneer Invest. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993). These five factors are relevant but not controlling where the court's initial decision was on the merits rather than due to procedural default. *Burnley*, 75 F. App'x at 333. Finally, "[a]n attorney's inexcusable neglect is normally attributed to his client." *Allen v. Murph*, 194 F.3d 722, 723 (6th Cir. 1999) (citation omitted).

In its prior opinion, the Court reached the merits of one prong of the disability discrimination test—whether Sanders' Type 1 diabetes renders him "disabled" under the

KCRA—and granted summary judgment in favor of Bemis primarily on that basis. [*See* R. 27.] Accordingly, the five Supreme Court factors are relevant but not controlling. *See Burnley*, 75 F. App'x at 333. Upon review, the Court finds the factors, as well as relevant case law from other districts, weigh strongly against granting Sanders' Rule 60(b) motion.

First, Bemis will be prejudiced if the case is reopened and the summary judgment motion is relitigated. In *Burnley v. Bosch Americas Corp.*, a party failed to file a response brief to opposing counsel's summary judgment motion, and the district court granted summary judgment in favor of the movant. The losing party then filed a motion for an extension of time to respond, two days after the court issued its opinion and entered judgment. *See* 75 F. App'x at 333. The Sixth Circuit determined the party who moved for summary judgment would be substantially prejudiced if the case was reopened, because that party had "already expended substantial resources conducting discovery, and filing its motion for summary judgment." *Id.* Further, because the district court had already dismissed the case on the merits, "it would be unfair to require [the winner] to expend additional resources litigating this claim, particularly because [the losing party] had ample time to conduct discovery, and failed to present evidence substantiating her claim . . . ." *Id.* In the same way the *Burnley* non-movant was found to be substantially prejudiced, Bemis suffer prejudice here if Sanders' request is granted. The case was already litigated at length, and Bemis should not be forced to relitigate the matter simply where Sanders failed to litigate it properly.

Next, the length of the delay weighs against granting the Rule 60(b) motion. Sanders moved for reconsideration quickly after the Court's opinion and judgment issued—only two days later. Nevertheless, the relevant period of time is not that two day period but, instead, the lengthier period of time between the date Sanders filed the incorrect response and the date he

actually moved to remedy the error. This amounts to one hundred ten days. [*Compare* R. 24 (filed October 12, 2016) *with* R. 29 (filed February 1, 2017).] Furthermore, even if it was reasonable for Sanders to fail to discover the incorrect filing on his own, Bemis notified Sanders of the incorrect response in its reply brief. After that happened, Sanders still waited one hundred eight days to draw the Court's attention to the error. [*Compare* R. 25 (filed October 14, 2016) *with* R. 29 (filed February 1, 2017).] Either way you look at it, the delay in this case is significant and weighs against Rule 60(b) relief.

The reason for the delay also undermines Sanders' position. Sanders describes the incorrect response brief as a "horrible scrivener's error" and he maintains the error was "masked" until the Court issued its opinion and judgment. [R. 29 at 3, 7.] The error was not "masked." Counsel simply failed to monitor the docket. Sanders could have easily discovered the error if he had simply double-checked the adequacy of the filing a single time—a practice the Court hopes would be routine among attorneys during this electronic-filing age. But more importantly, perhaps, Sanders could have easily discovered the error if he had thoroughly read Bemis's reply brief, wherein Bemis clearly alludes to the significant lack of argumentation in the response and contends Sanders "waived" various issues. The Sixth Circuit has made clear that "parties have an affirmative duty to monitor the dockets to keep apprised of the entry of orders that they may wish to appeal" and has emphasized that "parties continue to have a duty to monitor the court's docket" regardless of whether they are properly receiving email notifications of filings. *Yeschick v. Mineta*, 675 F.3d 622, 629-30 (6th Cir. 2012). Counsel's failure to monitor the docket in this case is no different than the case of inexcusable neglect described in *Yeschick* and the other court of appeals opinions described therein. *See id.* (compiling cases).

The impact of the delay on the judicial proceedings in this case is great, as the Court has already invested time and effort into resolving the summary judgment motion. The Court has cancelled the Final Pretrial Conference and Jury Trial dates and turned its attention to other proceedings, and, although the Court would gladly return the matter to the active docket should justice so require, Sanders' neglect has undoubtedly had a significant impact on the procedural status of this proceeding.

Finally, while the Court has no evidence that Sanders has acted in bad faith, *see Pioneer Invest. Servs. Co.*, 507 U.S. at 388, the other four factors weigh so strongly against granting the Rule 60(b) motion that any good faith is of little consequence. After considering all five excusable neglect factors, the Court concludes Sanders' failure to file an appropriate response brief was inexcusable neglect underserving of Rule 60(b) relief.

This conclusion is consistent with the conclusions of other district courts faced with similar situations. For example, where a newly retained plaintiff's attorney failed to file a response to a defendant's summary judgment motion because prior counsel did not alert him to the motion, the failure to respond or to seek an extension of time was considered inexcusable neglect. *See Eversole v. Allstate Ins. Co.*, No. 09-37-EBA, 2010 U.S. Dist. LEXIS 74879, at *4-5 (E.D. Ky. July 26, 2010) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 175 (6th Cir. 1984)). Where a plaintiff failed to respond to a pending motion to dismiss because plaintiff's counsel failed to provide defense counsel with his preferred post office box address, the failure to respond was inexcusable neglect because the reason for the neglect was "not outside the control of Plaintiff's counsel." *Fiore v. Southern Poverty Law Center, Inc*., No. 3:09-34-DCR, 2010 U.S. Dist. LEXIS 4314, at *3 (E.D. Ky. Jan. 20, 2010). And where a plaintiff failed to include her recitation of the facts in a response to a summary judgment motion and the opposing party

7

pointed this failure out in its reply brief, that failure was also deemed inexcusable. *McDaniel v. Am. Gen. Fin. Servs.*, No. 04-2667-B, 2007 U.S. Dist. LEXIS 52217, at *4-*10 (W.D. Tenn. July 17, 2007).

Technology is both a blessing and a curse. The Court's electronic filing system makes it easy to upload the appropriate documents, but it is also easy to upload the wrong ones. Thus, while the Court fully acknowledges how uploading errors occur, this remains precisely why attorneys must carefully review their work and consistently stay apprised of the docket. "[G]ross carelessness or inadvertent conduct that results in judgment will not give rise to a successful claim of excusable neglect if the facts demonstrate a lack of diligence." *Yeschick*, 675 F.3d at 631. Sanders' counsel's error in this case fails to rise to the level of excusable neglect set forth in binding and persuasive case law, and that error is unfortunately attributed to Mr. Sanders himself. *See Burnley*, 75 F. App'x at 329; *Allen*, 194 F.3d at 723.

**B**

Sanders is also precluded from relief under Federal Rule of Civil Procedure 59. Rule 59(e) allows a litigant to file a motion to alter or amend a judgment of a district court where there has been a clear error of law, newly discovered evidence, an intervening change in the law, or to prevent manifest injustice. *See, e.g.*, *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 833 (6th Cir. 1999). Notably, a motion under Rule 59(e) is "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Further, a "manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Whether to grant or deny a Rule 59(e) motion is generally a matter within the district court's sound discretion. *See Engler*, 146

F.3d at 374.

In the Court's opinion granting summary judgment, the Court determined Sanders could not recover under the KCRA because the record does not demonstrate Sanders' Type 1 diabetes constitutes a "disability" under the state statutory framework. [*See* R. 27 at 6-11.] Sanders now points the Court to *Gilday v. Mecosta County*, 124 F.3d 760 (6th Cir. 1997), and *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419 (6th Cir. 2014), for the proposition that the ameliorative effects of Sanders' insulin pump should not be taken into account when deciding whether his diabetes is disabling. [R. 29 at 12-13.] These cases do not change the Court's analysis.

To begin, the Court's original decision did not hinge on any ameliorative effects of Sanders' insulin use. [*See* R. 27 at 8-12 (focusing on Sanders' testimony and various doctor's letters about Sanders' condition, rather than ameliorative effects).] But even if the Court had considered ameliorative effects, it would have done so properly.

In 1997, the Sixth Circuit found an individual's diabetes was a disability under the ADA, in light of regulatory language instructing that the disability determination be made "without regard to mitigating measures such as medicines, or assistive or prosthetic devices." *Gilday*, 124 F.3d at 762 (quoting 29 C.F.R. § 1630 App. 1630.2(j)). According to *Gilday*, "[a] person with a serious disability who depends on medicine or a medical device to ameliorate the effects of that disability nonetheless has a limit on a major life activity: without the corrective measure the person would be unable to perform a major life activity." *Id.* at 763. Sanders would have the Court rely on this language to find him disabled. However, an intervening Supreme Court decision counsels otherwise.

9

In 1999, the Supreme Court reached the opposite conclusion of *Gilday* when evaluating the relevant provisions of the ADA:

> A 'disability' exists only where an impairment 'substantially limits' a major life activity, now where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.

*Sutton v. United Air Lines*, 527 U.S. 471, 482-83 (1999). Pursuant to *Sutton*, courts *do* take into account ameliorative effects when assessing whether an individual's impairment substantially limits one or more life activities. *Id.* This aspect of *Sutton* was rejected by Congress in 2008, when Congress adopted the ADA Amendments Act of 2008 ("ADAAA"). *See Greer v. Cleveland Clinic Health Sys.*, 503 F. App'x 422, 431 n. 2 (6th Cir. 2012). However, the KCRA is interpreted consistent with pre-ADAAA, rather than post-ADAAA, jurisprudence. *See Breen v. Infiltrator Sys.*, 417 F. App'x 483, 486 (6th Cir. 2011) (Sutton, J.); *Laferty v. United Parcel Serv., Inc.*, 186 F. Supp. 3d 702, 707 n. 3 (W.D. Ky. 2016).[3] Accordingly, *Sutton* remains the law of the land when it comes to considering a plaintiff's ameliorative effects under the ADA rather than the amended ADAAA. And because KCRA analyses are concerned with the law under the ADA, *Sutton* still controls in Mr. Sanders' case.

In the end, Sanders has not drawn the Court's attention to any clear errors of law, intervening changes in the law, newly discovered evidence, or manifest injustice in the Court's evaluation of Sanders' diabetes under the KCRA. *See* Fed. R. Civ. P. 59(e)*; GenCorp, Inc.*, 178

---

[3] The Court has discovered one Kentucky Court of Appeals decision which cites ADAAA provisions. *See Tanner v. Jefferson Cnty. Bd. of Educ.*, No. 2015-CA-001795-MR, 2017 WL 2332681, at *2 (Ky. App. May 26, 2017). Nevertheless, to the Court's knowledge, "no published Kentucky cases address[ ] how the ADAAA affects, if at all, claims for disability discrimination brought under the KCRA." *Laferty*, 186 F. Supp. 3d at 707 n. 3. The Sixth Circuit and a number of federal district courts continue to apply pre-ADAAA jurisprudence to their KCRA analyses, and "[u]ntil such time as the Kentucky Supreme Court or General Assembly speaks on this issue, the Court will take that approach." *Id.* (compiling cases).

F.3d at 833. As the Court explained, Sanders has not put forth sufficient evidence to demonstrate his diabetes should be considered a disability for purposes of the KCRA. [R. 27 at 9-11.] Letters from Sanders' physicians, as well as Sanders' own deposition testimony, indicate that he is not substantially limited in any of his major life activities. [*Id.*] The Court did not err in its evaluation of the record before it, and Sanders is not entitled to relief from the judgment.

## III

For the foregoing reasons, the Court hereby **ORDERS** that Plaintiff Sanders' Motion to Alter or Amendment Judgment [R. 29] is **DENIED**. This action is once again **CLOSED** and **STRICKEN** from the Court's active docket.

This the 8th day of August, 2017.

Gregory F. Van Tatenhove
United States District Judge